IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MOLLY G.**[1], | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:24-CV-1390-SMY |
| | ) |
| **FRANK BISIGNANO,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Molly G. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Social Security ("SSI") benefits pursuant to 42 U.S.C. § 423. Because the ALJ failed to develop the record when evaluating the opinions of the state-agency psychologists, the Court reverses the ALJ's decision and remands to the agency for further proceedings.[2]

### Procedural History

Plaintiff applied for DIB and SSI benefits on September 3, 2019, alleging a disability onset date of April 17, 2018 (Tr. 208, 210). Plaintiff's claims were initially denied on March 30, 2020 (Tr. 72-86), and again upon reconsideration on July 6, 2020 (Tr. 89-108). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 6, 2020 (Tr. 32-55). The ALJ issued an unfavorable decision on November 23,

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.
[2] Because the Court remands based on failure to develop the record, it does not address Plaintiff's remaining arguments. Plaintiff may raise those issues directly with the ALJ on remand.

2020 (Tr. 10-31). After the Appeals Council declined her request for review (Tr. 1-3), Plaintiff filed her original Complaint before this Court on July 26, 2021 (Tr. 742-43). The case was remanded to the Commissioner upon stipulation of the parties on March 15, 2022 (Tr. 732-734).

On August 29, 2022, the Appeals Council issued an order remanding the case back to the ALJ (Tr. 737-39). In its remand order, the Council concluded the ALJ's RFC determination was insufficiently supported with citations to the record and was inconsistent with state-agency opinions that limited Plaintiff to one- to three-step tasks and brief/superficial interaction with coworkers and supervisors (Tr. 737-38). Therefore, the Appeals Council directed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity," noting the ALJ "may request the medical sources provide additional evidence and/or further clarification of the opinions" pursuant to 20 C.F.R. § 404.1520b and 416.920b (Tr. 738). The Council also directed the ALJ "[i]f warranted by the expanded record, [to] obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant 's occupational base" (Tr. 738).

A second hearing before the ALJ was held on May 3, 2023, and the ALJ issued an unfavorable decision on June 14, 2023 (Tr. 645-74). Plaintiff then filed written exceptions with the Appeals Council, who declined jurisdiction on March 20, 2024, leaving the ALJ's decision the final decision of the Commissioner (Tr. 634-37). Plaintiff filed her Complaint seeking review of the final decision of the Commissioner on May 24, 2024. Doc. 1.

## Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. The ALJ erred in evaluating the state-agency psychologists' opinions because he did not seek clarification of the meaning of "step," "brief," or "superficial as used in their opinions.

2. The ALJ failed to cite evidence from the record to support the specific limitations in his RFC determination.

3. The ALJ's evaluation of Plaintiff's symptom testimony was not supported by substantial evidence.

## **Legal Standard**

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ follows a five-step evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. At step two, the ALJ must determine whether the claimant has a severe, medically determinable impairment or combination of impairments. At step three, the ALJ must determine whether the claimant's impairments meet or medically equal one of a list of specific impairments enumerated in the regulations. At step four, the ALJ must determine whether the claimant has the Residual Functional Capacity ("RFC") to perform past relevant work. Finally, at step five, the ALJ must determine whether

the claimant is able to perform any other work considering their RFC, age, education, and experience. *Id.*

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The claimant bears the burden of proof at steps one through four. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## Decision of the ALJ

On remand, the ALJ reconducted his analysis of whether Plaintiff was disabled and followed the five-step analytical framework with respect to Plaintiff's application. As a

threshold matter, the ALJ determined that Plaintiff's date last insured was June 30, 2020, meaning Plaintiff must establish she was disabled on or before this date (Tr. 649).

The ALJ made the following determinations during the five-step analysis: Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 651). Plaintiff had the following severe impairments: degenerative disc disease, obesity, insomnia, restless leg syndrome, hypothyroidism, bipolar disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder ("ADHD") (Tr. 651). Plaintiff's impairments did not meet or equal any of the listed impairments in the regulations; Plaintiff had moderate limitations in interacting with others, concentration, persistence, and pace, and adapting or managing herself, but no marked or extreme limitations (Tr. 652).

The ALJ determined Plaintiff had following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally stoop, and frequently kneel, crouch, and crawl. The claimant should avoid unprotected elevations and operating or being near dangerous moving machinery. She can learn and engage in rote tasks that are simple, routine, and repetitive and can be learned by demonstration within 30 days. The claimant should not work in an environment that is stringently production or quota-based, and thus may not perform fast paced assemble line of work. She can meet production requirements that allow her to sustain a flexible and goal-oriented pace. She should not engage in work related interactions with the general public. She cannot perform jobs that involve working in close coordination with coworkers. Therefore, the claimant work jobs that entail only occasional work-related interaction with coworkers. She can occasionally interact with her supervisor to complete work task throughout the workday.

(Tr. 654-55).

In making the RFC determination, the ALJ considered Plaintiff's subjective testimony regarding her mental health symptoms and found that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her testimony regarding the intensity,

persistence, and limiting effects of those symptoms was not consistent with the medical and non-medical evidence in the record (Tr. 656). In so doing, the ALJ reviewed the treatment records and reports of her treating provider, Katrina Tripp, the results of a consultative exam by Dr. Warshauer, medical opinions of the state-agency psychologists Dr. Howard Tin and Dr. David Biscardi, as well as Plaintiff's daily reported activities (Tr. 658-64).

The ALJ noted that although Ms. Tripp indicated she did not believe the claimant would be able to sustain long term employment, this was inconsistent with the largely normal mental status exams from that time that showed some improvement with medication (Tr. 664 (citing Tr. 437-55)). The ALJ acknowledged a medical source statement completed by Ms. Tripp that indicated marked limitations in Plaintiff's ability to carry out detailed instructions, maintain concentration, and work with others, but noted the only explanation given for these conclusions was the statement "see records," and Plaintiff's treatment records did not support marked limitations (Tr. 644 (citing Tr. 600-02)).

Regarding the opinions of the state-agency consultants, the ALJ acknowledged Dr. Tin's conclusion that Plaintiff was limited to two-step tasks and Dr. Biscardi's conclusion that Plaintiff was limited to three-step tasks (Tr. 662 (citing Tr. 68, 105)). However, the ALJ stated he was unsure what a "step" was in the vocational context and noted the term was undefined in the narrative discussions (Tr. 662-63). Although Plaintiff's representative at the hearing argued that a limitation to two- or three-step tasks was related to General Education Development ("GED") ratings, the ALJ concluded the Office of Disability Policy's October 29, 2021, Emergency Message (EM-21065) prohibited ALJs from considering information in the GED ratings (Tr. 663). Further, the ALJ found that some of Plaintiff's reported activities, such as driving, paying bills, preparing simple meals, babysitting, using a computer, shopping

in stores, doing light chores, and caring for her dog were inconsistent with a limitation to two- or three-step tasks (Tr. 663).

Similarly, the ALJ noted that although Dr. Biscardi indicated Plaintiff was limited to interacting "briefly/superficially with coworkers/supervisors and the public" in his narrative explanation of his RFC determination (Tr. 105), he did not define "brief" or "superficial" (Tr. 663). Reasoning that a limitation to less than occasional interaction with coworkers/supervisors would be inconsistent with the moderate limitations noted elsewhere in Dr. Biscardi's report as well as with the daily activities listed above, the ALJ found that portion of Dr. Biscardi's opinion unpersuasive (Tr. 664).

After providing an explanation for his RFC determination, the ALJ noted that Plaintiff has no relevant work history (Tr. 665). Based on the testimony of a Vocational Expert given at the hearing, the ALJ determined that Plaintiff could perform the following representative jobs: Marker (DOT #209.587-034), Routine Clerk (DOT #222.687-022), Router (DOT #222.587-038), Tube Operator (DOT #239.687-014), Document Preparer (DOT #249.587-018), Table Worker (DOT #739.687-182), Cleaner (DOT #323.687-014), Routing Clerk (DOT #222.687-022). Therefore, the ALJ concluded that Plaintiff had not been disabled as defined in the Social Security Act from the alleged onset date through the date of his decision (Tr. 665-66).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**Agency Forms**

Plaintiff alleges that she became disabled on April 17, 2018, and that her disability arose from the following conditions: bipolar disorder, manic depressive disorder, anxiety, esophageal tear, primary ovarian failure, migraines, high blood pressure, arrythmia, degenerative disk disease, grave's disease, gout, osteomyelitis, glucose intolerance, deviated septum, and insomnia (Tr. 226-36).

**Evidentiary Hearing**

The second hearing on remand was held on May 3, 2023, during which Plaintiff was represented by counsel (Tr. 677). Vocational Expert ("VE") Laura Pizzuro testified that, given the hypothetical RFC posed by the ALJ, several jobs existed in the national economy for an individual of Plaintiff's age, education, and work history (Tr. 689). Plaintiff's representative asked the VE if her answer would change if Plaintiff were limited to brief and superficial, rather than occasional interactions (Tr. 690). The VE testified that in her opinion, "brief and superficial" meant "less than occasional" and that such a limitation would eliminate all jobs (Tr. 691). The ALJ then asked the VE to assume "brief and superficial" meant "more than occasional," and the VE replied that the previously identified jobs would remain (Tr. 691).

The ALJ stated that "brief and superficial" was not a vocationally relevant term and that the definition offered by the VE was only her personal opinion (Tr. 693-696). When asked by Plaintiff's representative whether he had contacted the medical source for clarification, the ALJ stated he had not and that he was "not going to credit any assessment or an opinion when they don't define" a term in the opinion itself (Tr. 694). The ALJ further reasoned that, because a limitation to less than occasional interactions with supervisors and coworkers would be

inconsistent with the moderate limitation indicated elsewhere in the state-agency medical opinions, the opinion was internally inconsistent and didn't deserve much weight (Tr. 697).

### Relevant Medical Records[3]

Plaintiff primarily received treatment for her mental health impairments from Katrina Tripp, a physician's assistant at Rural Health, Inc (Tr. 437-56). At the time of her alleged onset of disability, her treatment records indicate her chief complaints were bipolar disorder, generalized anxiety disorder, panic disorder, and insomnia, for which she indicated her medications were helping (Tr. 438). From Plaintiff's alleged onset date through the date of the second hearing, she continued to see Ms. Tripp and her medications were modified several times (Tr. 437-56, 603-33). During these visits, her mental status exams generally indicated normal appearance, speech, and cognition, but also noted a sad/irritable mood and an anxious, sad, and flat affect at times (Tr. 437-56, 603-33).

In 2018, Ms. Tripp noted she did not believe Plaintiff was able to sustain long term gainful employment and encouraged her to pursue disability benefits (Tr. 440). In an RFC assessment prepared in September of 2020, Ms. Tripp indicated Plaintiff was markedly limited in several functional areas, including the ability to follow detailed instructions, maintain attention, and work in coordination with others (Tr. 600-01).

On March 10, 2020, Plaintiff underwent a consultative psychological exam by Dr. David Warshauer, who affirmed diagnoses of bipolar I disorder, ADHD, and panic disorder (Tr. 541-43). Dr. Warshauer noted that Plaintiff's ADHD is extremely high on the Conners scale (Tr. 542).

---

[3] Because Plaintiff does not challenge the ALJ's findings regarding her physical impairments, the Court only discusses the portions of the record that pertain to Plaintiff's mental RFC.

The state-agency psychologist at the initial level, Dr. Howard Tin, opined that Plaintiff was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration, and work in coordination with/in proximity to others, interact with the general public, and get along with coworkers, but found no significant limitations in other functional areas (Tr. 67-68). Dr. Tin concluded that Plaintiff's descriptions of the severity of her conditions were not consistent with her ability to function generally well from day to day (Tr. 68). Separately, Dr. Tin noted that Plaintiff "is capable of performing one and two-step tasks" (Tr. 68).

The state-agency psychologist at the reconsideration level, Dr. David Biscardi, found moderate limitations in the same areas, with additional moderate limitations in Plaintiff's ability to accept instructions and respond appropriately to criticism, maintain socially appropriate behavior, respond appropriately to change, and travel in unfamiliar places or use public transportation (Tr. 105). Dr. Biscardi noted that Plaintiff could carry out one- to three-step tasks, but would be overwhelmed if the tasks were more complicated, complete a normal workday, interact briefly-superficially with coworkers/supervisors and the public, and adapt to changes/stressors associated with simple routine activities (Tr. 105).

## Discussion

Plaintiff argues the ALJ erred by discrediting the portions of Drs. Tin and Biscardi's opinions that limited her to performing two- and three-step tasks on the basis that the term "step" was undefined. Doc. 15 at 8. The Court agrees.

The Commissioner acknowledges that "a limitation on the number of steps involved in a task can be considered vocationally relevant under applicable case law and agency policy." Doc. 21 at 9. As such, the Court finds the ALJ committed an error of law in concluding that

the term step "is too vocationally imprecise to use in this decision or find persuasive" and that Agency policy "prohibits its adjudicators from considering information in the [GED] Ratings" (Tr. 663). As the Commissioner concedes, the since-revised emergency message cited by the ALJ (EM-21065) stated that GED ratings do not correspond to SSA's regulatory definitions of unskilled, semiskilled, and skilled work; it did *not* state that GED reasoning levels do not correspond to the number of steps involved in a job. Doc. 21 at 9 n.5.[4]

The Appeals Council's remand order directed the ALJ to "give further consideration to the claimant's maximum residual functional capacity," advising the ALJ that he may "request medical sources provide additional evidence and/or further clarification" as appropriate (Tr. 738). Despite this, the record indicates the ALJ did not seek clarification from either Dr. Tin or Dr. Biscardi as to the meaning of the term "step" in vocationally relevant terms. Nor did he request clarification from the medical sources as to how they defined "brief and superficial," despite acknowledging during the hearing that he should do so (Tr. 693 ("[D]on't I need the medical source, the person giving that opinion to define it?")). When Plaintiff's representative suggested requesting additional information from Dr. Biscardi, the ALJ refused (Tr. 694). By not seeking clarification he recognized was necessary, the ALJ failed in his duty to develop the record. *See Cieszynski v. Kijakazi*, No. 22-2024, 2023 U.S. App. LEXIS 6109, at *15 (7th Cir. Mar. 15, 2023) ("If the ALJ was concerned that [the agency consulting examiner] 'did not provide any specific limitations or explain the rationale for his conclusions,' he should have followed up with the doctor.") (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)).

---

[4] Indeed, Appendix C to the Dictionary of Occupational Titles defines GED Reasoning Level One as the ability to "carry out one- or two-step instructions." *Appendix C: Components of the Definition Trailer*, Occupational Info https://occupationalinfo.org/appendxc_1.html.

Although the Commissioner concedes the ALJ was mistaken about the vocational relevance of the term "step" and misquoted an agency publication regarding the use of GED ratings, the Commissioner argues that because the ALJ provided separate grounds for finding the relevant portions of the medical opinions unpersuasive—their inconsistency with Plaintiff's reported daily activities—any error is harmless. Doc. 21 at 9-10. An error is considered harmless when a reviewing court is "convinced that the ALJ will reach the same result" upon remand, with the understanding that the harmless error standard is not "an exercise in rationalizing the ALJ's decision." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Here, a review of the portions of the record cited by the ALJ as inconsistent with the state-agency opinions does not convince the Court that the ALJ would reach the same result. The ALJ reasoned that Plaintiff's ability to "drive, pay bills, prepare simple meals, babysit, use a computer, shop in stores, perform light household chores, and care for her dog" was inconsistent with a limitation to one- to three-step tasks. *Id.* at 9 (citing Tr. 662). However, the record indicates that Plaintiff no longer drives due to increased anxiety and vision problems, and that she might not renew her drivers license after it expired in November of 2022 (Tr. 44, 289, 917).[5] The record also indicates that Plaintiff no longer babysits for her friends due to incidents of increased aggression towards the children (Tr. 686). Moreover, because the ALJ stated multiple times during the hearing and in his decision that he did not know the meaning of the term "step" in a vocational context (Tr. 662-63, 694-95), and because he pursued none of the options available to him to clarify its meaning, the Court struggles to

---

[5] The Commissioner acknowledges Plaintiff's testimony that she no longer drives, but attempts to rebut this by citing to a portion of the record, also cited by the ALJ, indicating that Plaintiff drove herself to an examination in March 2020. Doc. 21 at 9 (citing Tr. 662). However, the issue is not whether Plaintiff was ever able to drive, something she does not deny, but whether the ALJ considered Plaintiff's testimony that she no longer drives due to worsening symptoms when making his RFC determination.

see how the ALJ could determine whether the ability to perform light chores or prepare simple meals was inconsistent with a limitation to two- or three-step tasks.

Similarly, the ALJ found that Dr. Biscardi's opinion limiting Plaintiff to "brief and superficial" interactions with coworkers and supervisors was inconsistent with reported activities such as driving, babysitting, taking college classes, and planning for her wedding (Tr. 664). However, as previously noted, Plaintiff no longer drives or babysits due to incidents of increased anxiety and aggression, respectively. Although the ALJ references Plaintiff taking college classes (Tr. 664), he does not cite to any portion of the record to support this statement. Thus, the Court cannot determine whether these classes involved any direct social interaction that would be inconsistent with Plaintiff's alleged limitations.

While the limited scope of the Court's review does not permit reweighing the evidence or substituting the Court's judgment for that of the ALJ, *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021), the Court nonetheless must ensure the ALJ fully considered the full record in reaching his decision. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) ("In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including … a claimant's own statement of what he or she is able or unable to do."). That the ALJ justified his RFC determination with reference to activities such as driving and babysitting without acknowledging that Plaintiff had apparently ceased both activities due to worsening symptoms suggests that the ALJ failed to do so. This error was not harmless, as the ALJ repeatedly relied on Plaintiff's ability to perform these since-discontinued activities to discount the opinions of Drs. Tin and Biscardi, as well as Plaintiff's subjective symptom testimony. (Tr. 662-64). Given this, the Court cannot be certain that the result would be the same upon remand.

**Conclusion**

After careful review of the record, the Court finds that ALJ committed errors of law, and that these errors are not harmless. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits and SSI is **REVERSED** and the case **REMANDED** to the ALJ for further consideration consistent with this Order. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

**DATED:  September 29, 2025.**

**STACI M. YANDLE**
**United States District Judge**